UNITED STATES v. ONE STILL. See Case No. 10,534.

## Case No. 15,957.

### UNITED STATES v. ONE THOUSAND FIVE HUNDRED BALES OF COTTON.

[10 Int. Rev. Rec. 52; 16 Pittsb. Leg. J. 130.]

District Court, E. D. Tennessee. Aug., 1869.[1]

CONFISCATION ACTS — WAR OF THE REBELLION — SEIZURE OF COTTON—PROCLAMATION OF AMNESTY —JUDICIAL NOTICE — CESSATION OF HOSTILITIES.

1. The president's proclamation of pardon and amnesty issued Dec. 25, 1868, removed the guilt from parties who had sold, given, purchased, or acquired cotton with intent that the same should be used in aiding or abetting the insurrection, and thereby relieved the property itself from being a lawful subject of prize and capture under the act of August 6, 1861 (12 Stat. 319).

2. The courts will take judicial notice of the fact that the hostilities of the late Civil War ceased and peace was restored by the surrender of the last armies of the Confederacy west of the Mississippi in May, 1865.

[This was an information of forfeiture against 1,500 bales of cotton, under the confiscation act of August 6, 1861.]

TRIGG, District Judge. The information charged, first, that the cotton (1,500 bales) had been sold or given, purchased or acquired, with the intent to be used in aiding, abetting and promoting the late insurrection, and that the same was used by the owners, or by their consent, in aiding, abetting and promoting said insurrection, in violation of the act of congress approved the 6th day of August, 1861 [12 Stat. 319], and thereby became a lawful subject of prize and capture; second, it was charged that the cotton had been purchased in and was being transported from a state or district in insurrection against the United States, into some one of the loyal states, and that the same became thereby forfeited to the United States, being in violation of the act of congress approved July 13, 1861 [Id. 255]. The issues were made upon these two charges in the information, and a vast amount of testimony, oral and written, was given to the jury. The verdict of the jury in favor of the claimant upon the first charge in the information, I think, resulted mainly from the charge of the court as to the effect of the proclamation of pardon and amnesty issued by the president on the 25th day of December, 1868.

The court charged the jury, substantially, that if the cotton in controversy had been sold or given, purchased or acquired, with the intent that the same should be used in aid-

ing, abetting or promoting the insurrection in the spring of 1865, or if the owners consented that the same might be so used; that the proclamation aforesaid, of the 25th of December, 1868, had the effect to remove the guilt of the party thus selling or giving the cotton to be used, and also the guilt of the owner consenting to such use, and thereby relieved the property itself from being a lawful subject of prize, and capture under and by virtue of the said act of August 6, 1861. The second charge in the information —to wit, that the cotton had been purchased in a state or district in insurrection, and was being thence transported into some one of the loyal states, in violation of the act of July 13, 1861—was decided in favor of the claimant, mainly, I think, upon the charge of the court to the effect, substantially, as follows: That the act last mentioned, commonly termed the "Non-Intercourse Act," prohibited all commercial intercourse between the inhabitants of the states or parts of states declared in insurrection and the rest of the United States, and such commercial intercourse should be unlawful as long "as such condition of hostility should continue." That the act, by its own limitation, would cease to be operative whenever the insurrectionary forces threw down their arms, surrendered to the authority of the United States, and their hostile demonstrations had ceased.

It was contended on behalf of the government that the court could not judicially know that hostilities had ceased unless that fact had been brought to its attention by plea or motion, and not until the president had issued his proclamation so declaring. But the court being of the opinion that. inasmuch as no formal declaration was necessary in a domestic war, the courts would take judicial cognizance of the fact that war existed, so likewise when the war was ended and peace restored would the courts take judicial cognizance of the fact that it was ended. It could hardly be supposed that this court should affect ignorance of a great fact in the history of the country, which was known to every man, woman and child throughout the length and breadth of the land, and keep its eyes closed until they should be opened by the formality of a plea and the proclamation of the president. The court accordingly instructed the jury that the Rebel forces on the west side of the Mississippi river, being the last to do so, having surrendered to the authority of the United States on the 24th or 25th of May, 1865, if they should believe from the evidence that the cotton in controversy was not shipped from within the Rebel lines until after that time, that then the "Non-Intercourse Act," as it is called, had ceased by its own limitation to be operative, and the cotton was not forfeited under said act by coming from an insurrectionary state or district into a loyal state or part of a state not declared in insurrection.

There were other points in the instructions given to the jury, such as permits claimed to have been issued by the secretary of the treasury and Mr. President Lincoln, which may have had some weight with the jury, but as those stated doubtless mainly influenced the decision of the case in favor of the claimant of the cotton, I deem it needless at this time to recur to any other questions of law stated in the charge of the court.

[This cause was carried, on writ of error, to the circuit court, where the decree of this court was reversed. and a venire de novo awarded. Case No. 15,958.]